BOARD OF EDUCATION OF THE BOROUGH OF FLEMING-
TON v. STATE BOARD OF EDUCATION, BOARD OF
EDUCATION OF RARITAN TOWNSHIP AND MARCUS L.
GLAZER.

Submitted March 23, 1911—Decided June 6, 1911.

1. The court will not review by *certiorari* the action of a local board of education under the School law until redress has first been sought in the special tribunals provided by the act.
2. The board of education of a township employed a teacher to teach in a certain named school "under the control of said board of education," and he accepted the employment and agreed to perform his duty thereunder and to observe and enforce the rules prescribed for the government of the school by the board of education; subsequently the portion of the township in which the school was situated became by law a separate school district. *Held,* that the new school district was not bound by the contract.
3. Where the legislature creates a new municipal corporation, embracing part of the territory of an existing municipal corporation, it may impose on the former the obligation of existing contracts of the latter; but in the absence of legislation to that effect, the old corporation remains liable for pre-existing obligations.
4. Section 34 of the School law does not impose upon a new school district, erected out of a portion of the territory of an existing school district, the obligation of a contract with a teacher.

5. .It is not consistent with the general principles of our law to hold that a contract for personal services is assignable so that the assignee may command the labor of one who has never agreed to serve him.

6. The creation of a new municipal corporation out of a portion of the territory of one already existing, does not impair the obligation of existing contracts; the old municipality remains liable notwithstanding its dismemberment.

7. The legislature possessed the power to divide counties and towns at its pleasure, and to apportion the common property and the common burdens in such manner as to it may seem reasonable and equitable.

On *certiorari.*

Before Justices SWAYZE, BERGEN and MINTURN.

For the prosecutor, *George H. Large.*

For the board of education of Raritan, *Dungan & Reger.*

For Glazer, *William C. Gebhardt.*

The opinion of the court was delivered by

SWAYZE, J.   On April 7th, 1910, the board of education of the township of Raritan and Marcus L. Glazer entered into a written contract by which the board employed Glazer "to teach in the Flemington Public School No. 1, under the control of said board of education, for the term of one year, from July 1st, 1910," and Glazer accepted the employment and undertook to faithfully perform his duty thereunder and to observe and enforce the rules prescribed for the government of the school by the board of education. The contract was made in pursuance of a resolution of the board of education adopted on April 4th. At that time a bill was pending in the legislature and about to pass, which became a law April 7th, by which a portion of the township of Raritan was incorporated as the borough of Flemington, subject to the acceptance of the act by a vote of a majority of the legal voters of the territory to be included within the borough. The act was accepted at a special election on April 26th, and the certificate of the re-

sult of the election filed according to law on May 2d. By this action the borough of Flemington became a separate school district under section 32 of the School law. *Pamph. L.,* 1903. *Special Session, p.* 14. Immediately thereafter, on May 5th, the board of education of Flemington submitted to the state superintendent of public instruction the question of its liability under the contract made with Glazer by Raritan. The state superintendent held that the contract was not binding upon Flemington. His decision was reversed by the state board of education. This action is now before us for review.

We entertain no doubt of our power to review the action of the state board. What was said by the court in *Draper* v. *Commissioners of Public Instruction,* 37 *Vroom* 54, was based upon the fact that the plaintiff in that case had accepted an appointment as a teacher under the School law and was bound by all of its provisions. and had therefore barred himself from having the propriety of his dismissal by the local school board reviewed in any tribunal except those specially created by the legislature for the purpose. That this case did not decide that the Supreme Court was deprived of its constitutional function to review the action of inferior tribunals by *certiorari,* is sufficiently indicated by what was subsequently said in *Stockton* v. *Board of Education of Burlington,* 43 *Id.* 80. The only effect of the decision in the Draper case was to hold that the court would not review the action of the local board of education until redress had first been sought in the special tribunals provided by the School law.

It is important in considering the merits of the case, to observe the exact language of the contract, and to interpret it in view of the situation that existed when it was made. At that time the board of education of Raritan must have known that the creation of the new borough, and the consequent severance of the school district under its charge, was probable, if not imminent. Unless we are to attribute to them an intent to impose an onerous obligation upon the school district of Flemington by hasty action in anticipation of the change, we must assume that they intended to safeguard the rights of the new school district by the terms of the contract. This they have

done. The contract is not a general contract by which Glazer is employed to teach in the Flemington Public School No. 1; it is expressly limited by the addition of the words "under the control of said board of education." Glazer, on his part, did not undertake generally to perform his duty as a teacher in Flemington Public School No. 1, but undertook to perform his duty under rules prescribed by the board of education, which must have meant the Raritan board of education, since the Flemington board of education was not then in existence. The contract was as it ought to have been, a contract where the personal element was considered, and Glazer could not be held under such a contract to obey the orders of another corporation. The words "under the control of said board of education" may have either one of two meanings attributed to them. They may mean, as seems more natural, that Glazer was to be under the control of the said board of education—that is, the Raritan board, and this would harmonize the contract of the board for the personal services of Glazer with Glazer's contract to obey its orders. It may, however, be that the words "under the control of said board of education" should be construed as descriptive of the school, and in that view the contract would be one to teach in the Flemington public school while it answered that description. Whichever view is taken, the result is that Glazer's contract ended when the condition upon which it depended ceased. In view of the fact that at the time this contract was made, Glazer came within the description of persons protected by the so-called Tenure of Office act (*Pamph. L.* 1909, *p.* 398), and became entitled under the provision of the Pension act of 1907 (*Pamph. L., p.* 286), to apply for a pension after a few years further service, it was a wise precaution on the part of the board of education of Raritan to limit his contract, especially in view of the obligation it imposed upon the Raritan board on the eve of the dismemberment of that school district.

This consideration is, in our judgment, enough to dispose of the case. Counsel have, however, argued the matter upon broader grounds, and the case is of sufficient public importance to justify an expression of opinion in the more general aspect.

The proposition of the defendants is that a contract made between one public corporation and an individual binds another public corporation subsequently created, embracing a part of the same territory. The right of the legislature to impose such an obligation cannot be questioned. *Rader* v. *Southeasterly Road District,* 7 *Vroom* 273; *Bloomfield* v. *Glen Ridge,* 9 *Dick. Ch. Rep.* 276; 10 *Id.* 505; *McCully* v. *Board of Education,* 34 *Vroom* 18. These cases are authority for the other proposition, that in the absence of legislation to the contrary, the old corporation remains liable for pre-existing obligations. In cases like *Scuine* v. *Belleville,* 10 *Id.* 526, and *Sproul* v. *Smith,* 11 *Id.* 314, the obligation of the new corporation was a necessary inference from the fact that the legislature destroyed the old corporation but was without power to impair the obligation of its outstanding contracts. The reason of the cases last cited is not applicable, however, to a case like the present, where only a portion of the old corporation is taken away to form the new, and the old corporation remains as a substantial legal entity. Such was the case of *McCully* v. *Board of Education, supra,* in which the liability of the old board of education still remained and was enforced by suit and judgment at law. In that case the court suggested that it might be possible that under affirmative words in the statute imposing an obligation upon the new board, the creditor might maintain an action against it, but that in the absence of negative words showing clearly a purpose to take away his right and remedy against the old board, that remedy remains. The present case differs from the McCully case, in that there are no affirmative words in the statute imposing an obligation upon the new district on a contract with a teacher. The only section of the School law that is in any way applicable is section 34. It enacts, that in any new school district the board of education in its corporate capacity shall become vested with the title to all school property, real and personal, in such district, and if, for the erection, repair or purchase of any such property there shall be an indebtedness for which the board of education of the school district to which said property originally belonged shall be liable, the said indebtedness shall be

assumed by and become the obligation of the board of education of the school district which shall have become vested with the title to such property. The legislature was here undertaking to define the obligation of the new school district, and limited it to indebtedness for the erection, repair or purchase of property, the title to which became vested in the new school district. Counsel for the defendant argued that the contract with Glazer was personal property, which passed to the Flemington board of education. It is not consistent with the general principles of our law to hold that a contract for personal services is assignable so that the assignee may command the labor of one who has never agreed to serve him. The assignability of another man's labor was permitted in some parts of the country prior to the adoption of the thirteenth amendment to the federal constitution. This former right conflicts with the views on this subject that have prevailed for nearly fifty years, and with the decision of our Court of Errors and Appeals in the recent case of *Schlessinger* v. *Forest Products Co.,* 49 *Vroom* 637. If this legal difficulty, however, in the defendant's argument could be overcome, the other language of the section makes it certain that the school property, real and personal, in such district cannot possibly refer to contracts with teachers. It would require some strain of language to hold that such contract had a local *situs* in the district, but it is quite impossible to hold that such contracts create indebtedness for erection, repair or purchase. Those words can refer only to tangible property—real estate or chattels.

It is argued that unless Flemington is to be held upon this contract, the act of 1910 creating the borough impaired the obligation of the contract with Glazer. This view seems to have troubled the state superintendent, and he escaped the difficulty by holding that the borough was created by the people themselves and not by the legislature. This answer is hardly satisfactory. The real answer is, that the effect of the creation of the borough was to leave the contract between Glazer and the Raritan board in full force and unimpaired. The obligation of neither party was affected. Raritan had the same right as before to Glazer's services, and Glazer had the

same right as before to claim compensation from Raritan. It may have been this liability that induced the Raritan board to limit the contract, as we have already said. It is true that Glazer has lost such security for the performance of his contract as might be found in the liability of the inhabitants of Flemington to contribute to his pay. It does not necessarily follow that a claim against Raritan would be less easily collectible than before; it might well happen that the proportion of the debts of the old corporation that would fall upon Flemington under the provisions of section 34 would be large in proportion to the ratables, a result that would be very probable where a new and expensive school house had recently been built within the territory of the new board out of the proceeds of bonds, for which, under section 34, the new board would be liable. There is another answer to this constitutional objection. The Supreme Court of the United States is the final authority, and it is there settled that the legislature of the state possesses the power to divide counties and towns at its pleasure, and to apportion the common property and the common burdens in such manner as to it may seem reasonable and equitable. *Laramie County* v. *Albany County*, 92 *U. S.* 307. This rule has quite recently been applied to legislation changing the boundaries of school districts (*Kies* v. *Lowrey*, 199 *Id.* 233), and is approved with abundant citation of authorities in the still more recent case of *Hunter* v. *Pittsburg*, 207 *Id.* 161. Mr. Justice Moody collected the authorities and they appear on page 178. It has the approval also of our Court of Errors and Appeals. *Bloomfield* v. *Glen Ridge*, 9 *Dick. Ch. Rep.* 276; 10 *Id.* 505. The severance of the school district did not impair the obligation of Glazer's contract.

For these reasons the judgment of the state board of education is set aside, with costs.